GINDRAT, ET AL. v. THE MECHANICS' BANK OF AUGUSTA.

1. Where the actual holder of a bill of exchange resides in a different town from that which is the residence of the parties sought to be charged, the notice of non-payment may be given through the post office, by an agent of the holder to whom the bill is transmitted for collection, although the agent and the party notified both reside in the same place. The head note of Foster v. McDonald, 5 Ala. Rep. 376, corrected and explained.

2. It is competent for a Bank, by custom or usage, and consequently by rule, to establish a mode for giving notice to charge the parties to a bill, different from that which obtains in the general commercial law; as for instance, to provide that notice may be sent by the post, even where all the parties reside in the same place, and such a custom, &c., will be binding on the parties to a bill made payable at the particular Bank.

3. It is not necessary to state the existence of such usage or rule in the declaration. The fact alledged, is, that notice was given, and this is proved by either the one mode of notice or the other.

Writ of error to the Circuit Court of Macon County.

ASSUMPSIT, by the Mechanics' Bank against John and John H. Gindrat, as indorsers of a bill of exchange, dated 23d June, 1838, at ninety days, payable at the Branch Bank of Alabama at Montgomery. The declaration is in the usual form, and avers that the defendants had due notice of the protest of the bill for non payment.

At the trial, the bill as well as its protest for non-payment were read in evidence, and the latter contains the certificate of the notary, that notice of the protest directed severally to the drawer and indorsers was deposited in the post office at Montgomery. It was also proved that the bill was deposited with the Bank at Montgomery, by the Mechanics' Bank of Augusta, Georgia, for collection.

The Cashier and President of the Branch of the State Bank at Montgomery were called as witnesses, and the Cashier gave evidence, that he had been in that station since January, 1837. The bill sued on was deposited in that Bank for collection by the Mechanics' Bank. That no usage or custom, existed, so far as his knowledge extended, with respect to the mode of giving notice of protest, on bills or notes deposited for collection; but it had been the uniform custom for the notary to give notice through the post office on paper deposited for collection as its own property; also that the notice thus given, was with the knowledge of the president and directors of the said Branch Bank. At the date of the protest, John H. Gindrat was residing in Montgomery, and both the defendants had been dealers, and transacting business, with the Bank since 1835, and had been protested on paper, before, and after the maturity of this bill. On the 8th of April, 1840, a resolution of the board of directors of the Bank was entered on the

minutes of its proceedings, by which it was resolved, that
thereafter, whenever it should be necessary to give notice to
any drawers, or indorsers, upon notes or bills payable at that
Bank, when the drawers or indorsers reside within the town
of Montgomery, it should be given through the post office.
This resolution was directed to be published for six weeks in
the newspapers of that town. This is the only resolution of
the board touching the manner of giving notice, except what
is contained in one of the rules adopted by the board at its
organization; and which provides, that any note or bill payable
at the Bank and belonging to it, shall, if not punctually paid
before the closing of the banking house on the last day of
grace, forthwith be given to the notary for protest, who, after
demanding payment, shall forthwith issue his protest, giv-
ing due notice to all the parties. The rule then provides, that
parties remaining under protest shall have no accommoda-
tion at the Bank, nor any bills, &c., with their names upon
it afterwards discounted, and extends all the provisions to
notes or bills deposited for collection. The evidence by the
president, was, that it had been the invariable custom of the
Bank to give notice through the post office. Other witnesses
also gave evidence, tending to show the general usage of the
Bank to give notice through the post office, to parties resident
in the town of Montgomery. It was also proved that the
defendants were partners transacting business in Montgomery,
although one of them resided at Franklin, in Macon county,
at which place was a post office.

The defendants offered several witnesses who had been no-
taries, or were notaries. One of them deposed, that it was
his invariable custom to give personal notice, when the party to
be notified resided in the town of Montgomery. Three others
were in the usage of giving notice, either through the post
office, or personally. The practice of the notary who made
the protest in this case, was to give notice through the post
office in all cases. It was also in evidence, that two other
persons who had been notaries for the bank, were in the usage
of giving personal notice as late as 1840, though both also
gave notice through the post office. There was also evidence
that the firm of John Gindrat & Co. had been dissolved, and a
new firm formed, of which the defendants were partners,

under the name of Gindrat, Steele & Co., and that this last firm was dissolved about three months previous to the maturity of this bill.

Under this state of facts, the Court charged the jury—

1. That during the co-partnership, notice to one of the co-partners was notice to all, but if they were satisfied of the dissolution, and it was known to the Bank, or to the plaintiffs, the defendants would be entitled to a several notice; but the co-partnership being established, it devolved on the defendants to show its dissolution; and, as a general rule, to give effect to the dissolution, the firm was required to give actual notice, or notice through the post office, to all with whom they had been in the habit of transacting business, and by publication to the community in general. This was excepted to by the defendants.

2. The defendants requested the Court to charge, that a custom, to change the law of giving notice personally, when the parties to be notified reside in the same town, must be a custom of the Bank, and that as such, it must be fixed, certain and compulsory, while it exists; and that it must have existed sufficiently long, and continuously, for parties to contract with reference to it. And if the jury should believe, that from the year, 1834, to the date of the protest of this bill, that the usage of notaries protesting for the Branch Bank at Montgomery was variant, sometimes giving notice personally, and at other times through the post office, when the parties resided therein; then, that such a usage is not binding on the defendants, and that notice through the post office under such circumstances is insufficient to charge them. This was refused, and the charge given, that a custom to change the law of notice to indorsers, so as to permit it to be given through the post office instead of personally, must be one, fixed, certain, and compulsory, while it exists; and that it must have existed sufficiently long, and have been sufficiently continuous for parties to contract with reference to it; and if such a custom existed with the Bank, the custom or usage of notaries employed by it, could not affect the right of the Bank.

3. The defendants next asked the Court to charge the jury, that no custom of protesting by notaries public, in violation of law, can change, or in any way affect the law itself in its ap-

plication; and therefore, if they should believe that the usage of giving notice to indorsers through the post office, when the parties resided in the same town, was the usage of the notaries, then that such notice is insufficient to bind the defendants in this case, although such usage was afterwards assented to by the Bank, unless the defendant also assented to it. This was given, and in addition to it the Court charged, that if the usage of giving notice to parties residing in the same town, through the post office, commenced with the notaries of the Bank, and the Bank had adopted, conformed to, and established for itself the usage thus commenced, it thereby became the usage of the Bank, and if it had existed sufficiently long for the parties to contract with reference to it, it was binding on the defendants, although the notaries of the Bank may have first commenced the practice.

4. The defendant then asked the Court to charge, that a custom when commenced must be continuous, and when established compulsory, and not left to the option of notaries whether they will adhere to it or not. That the evidence establishing it must be clear, certain, and conclusive. This was given, but with the addition, that if the Bank had adopted the usage of giving notice through the post office, instead of personal notice, and the notaries of the Bank of their own volition, departed from the usage, and sometimes gave personal notice, this was not the act of the Bank, but was the act of the notaries, and that no such departure from the usage of the Bank by the notaries could affect its validity.

5. The defendants next asked the Court to charge, that no custom, or usage, could be established by the Bank at Montgomery in opposition to the law merchant as declared by the statute. That the law merchant, referred to by the statute, means that personal notice shall be given when the parties reside in the same place where the protest is made, and therefore, if satisfied that all the parties resided in Montgomery at the date of the protest, then notice through the post office was not sufficient to charge the defendants. This was refused.

6. The defendants then requested the Court to charge, that under the pleadings, evidence of a special custom varying the general law was inadmissible, and should be disregarded by them. This was refused.

7. The defendants then asked the Court to charge, that under the charter of the Bank at Montgomery the best evidence of its acts, is an entry of the proceedings of its directors upon the books ; and if the jury was satisfied that no by-law, rule, or resolution, was passed by the directors of the Bank prior to the protest of the bill, and entered of record on the books of the Bank, then no parol evidence going to establish a usage varying the law requiring personal notice to be given to parties residing in the town where protest is to be made, can be allowed, and in defect of such proof, the jury should find for the defendant. This was refused.

8. They also asked a further charge, that if the jury believed that the plaintiff deposited the bill at Montgomery for collection, and the Bank there, when it fell due, through its notary, had the same protested, the contract must be so construed, as that both parties resided in the same town if the defendants resided there; and that any departure of the notary from the usage of the Bank when protesting for it, affected the notary and the Bank alike, to the holders of the papers deposited for collection, and that the act would operate in the same manner to discharge the defendants. This was refused.

9. Lastly—the defendants asked the Court to charge the jury, that the rule of the Bank adopted at its organization, required the notary of the Bank to give notice according to the law merchant; that the law merchant contemplates and requires personal notice to be given to indorsers when they reside at the town where the protest is made, and should the jury believe this rule was in force on the records of the Bank at Montgomery, when the bill was protested, then that the notice given is not sufficient to charge the defendants. This charge was refused to be given in the terms asked for, but the jury was instructed, that the rule referred to required the notary to give notice according to the law merchant, which requires a personal notice when the parties reside in the same town where the protest is made ; yet if the jury were satisfied that a usage of the Bank had been established as deposed to, and that the parties had contracted with reference thereto, then that the notice given through the post office would be sufficient to charge the defendants. The defendant excepted to the ruling of the Court in refusing to give the instructions as

42

requested, as he did also to the modifications appended to such as were given; and also to such as were given.

These several matters are opened by the assignments of error.

HARRIS, for the plaintiff in error, made these points—

1. Neither the collecting Bank, nor its notaries can establish a custom for giving notice different from that known to the law merchant. This must be personal when the party to be charged resides in the same town where the protest is made. [Stephenson v. Primrose, 8 Porter, 155; Foster v. McDonald, 3 Ala Rep. 34; Wilcox v. McNutt, 2 How. 776; Clay's Dig. 383, § 11, 12.]

2. If, however, such a custom is good it must have been established, or recognized by some formal act of the Bank. [Clay's Dig. 94; 7 Porter, 235.]

3. And even in such a case the custom should have been pleaded specially, and cannot be given in evidence under a general declaration. [1 Chitty Plead. 220-2; Jackson v. Henderson, 3 Leigh, 197.]

4. The rule of the Bank required notice to be given according to the law merchant, and therefore any other mode of notice was excluded.

5. The charges given were not authorized by the evidence, and were calculated to mislead the jury.

BALL, contra, insisted—

1. That the general law may be controlled or modified by custom or usage of a particular institution, especially when known and understood by the defendant. [Renner v. Bank of Columbia, 9 Wheat. 581; Mills v. Bank of U. S. 11 Wheat. 431; Bank of Wash. v. Triplett, 1 Pet. 30.]

2. A custom of a Bank brought home to a party dealing with it, enters into the essence of the contract, and becomes a constituent part it. [Fowler v. Bradly, 14 Pet. 318; Bank of Columbia v. McGruder, 6 H. & J. 180; 9 Mass. 155; Ib. 159; 12 Ib. 8; 10 Ib. 366; 17 Ib. 452; 3 Pick. 414; 1 Peters, 93; 1 H. & G. 231; 4 Wend. 484.] And the usage may be given in evidence as proof of the contract between the parties, as evidence of their assent. [11 Mass. 88; 4 Ib. 252; 6 Ib. 450;

5 Cranch, 52; 1 H. & G. 239; 3 Conn. 489; 6 H. & J. 172; 1 Peters, 170; 6 Cond. 440.]

3. The agent of the holder is only bound to give notice to his principal, and transmit him the requisite protests in order that he may give notice to those, he wishes to charge. If an agent undertakes to give notice, it will be good if given as early as it could have been given by the holder. [18 John. 230; 2 John. Ca. 1; 3 Ala. Rep. 34; 4 Ib. 148; 5 Conn. 698.]

4. The special custom may be proved under the averment of notice. [7 Porter, 175; 5 Cond. Rep. 698; 9 Porter, 300.] And when the facts are proved, the sufficiency of the notice is a question for the Court, and not for the jury. [3 Wend. 75; 11 John. 187; 1 Peters, 582.]

GOLDTHWAITE, J.—This case seems to have been contested by both parties, before the jury, under the impression that the notice of non-payment sent to the defendants, through the post office at Montgomery, by the notary, was insufficient, by the rules of the general law merchant, to charge them, and consequently, the attempt to support the suit by proving the custom and usage of the Bank at Montgomery, to give notice in this manner. In our judgment the notice sent in this manner was sufficient to charge them, independent of any special usage or custom, when the facts were disclosed that the Bank at Montgomery only held the bill for the purpose of collection, and that it was owned by a corporation located in another place. The law is now well settled that an agent holding a bill for collection, is not required to give notice directly to the parties to it, but his duty is immediately to notify his principal, he being a party to the bill, and the latter is entitled to charge the parties he looks to for payment, by sending them notice by the first mail after receiving information of the dishonor of the bill. [Colt v. Noble, 5 Mass. 167; Haynes v. Berks, 3 B. & P. 599; Turner v. Lague, 2 Johns. Cases, 1; Foster v. McDonald, 3 Ala. Rep. 34.] It is evident that a notice transmitted to the plaintiffs at Augusta, and by them returned to the defendants at Montgomery, would take more time for its conveyance, and involve more risk of miscarriage, than one deposited in the post office at Montgomery, addressed to the defendants there;

but the law merchant is not so unyielding in its nature as to require the performance of a useless act, or to refuse to adopt the act of the agent, if that is equally beneficial, and effectual, as action by the principal.    It is true, that it has been laid down that the strict rule of the law merchant, when the parties reside in the same place, requires that the notice shall be personal, or left at the residence of the party sought to be charged, (Williams v. Bank of U. S., 2 Peters, 96 ; Ireland v. Kip. 10 John. 420 ;) and this was recognized in our own Court, in Stephenson v. Primrose, 8 Porter, 34 ; but the reason of it is, if indeed there is any one which is satisfactory, that the permission to send the notice by mail, is itself rather the exception than the rule, as personal notice must long have preceded the general establishment of the post.    The charging a party, therefore, by notice sent by mail, was adopted to suit the general convenience of holders, who did not reside in the same place with the parties sought to be charged.    We apprehend it entirely competent, for a holder of a bill payable in Montgomery, and himself residing elsewhere, to direct an agent to whom it is transmitted for collection, to give notice of the dishonor to any of the parties by mail, and that it is immaterial where they reside, so the notice has the proper direction.

We should have deemed it unnecessary to have said so much on this point of the case, if it had not apparently been twice before the Court in another case, though at neither time was it decided.    In Foster v. McDonald, as reported in 3 Ala. Rep. 34, when a similar notice was given, and when the *prima facie* intendment was, that the parties resided in the same place, we conformed to the previous decision of Stephenson v. Primrose, but said if it should afterwards appear that from the residence of the holder at a distance from the place of payment, the notice of the dishonor of the bill could not have reached the defendant as soon as the informal notice actually given by the notary, it might be a question whether that was not sufficient. When the same case was again before the Court, in 5 Ala. Rep. 376, it appeared in the shape of a demurrer to evidence, and we held that the fair presumption was, that the notice was actually received by the defendant.    It would have been equally proper perhaps, to have placed the decision upon the broader ground, that, whether received or not, the notice was in itself

sufficient.   The head note prefixed to the report assumes more than was decided by the Court, and calls now for this correction, as otherwise it may have some tendency to mislead.

2. Although this point in the case is free from doubt, and would probably be decisive of the suit if sent back for another trial, yet the legal effect of the charge numbered five in the bill of exceptions, would remain for consideration.   It is this, which has caused us to keep the case so long under advisement.   At first, it seems a startling proposition, that a Bank has the capacity, by usage or custom, to establish a rule in opposition to the general law merchant; and we certainly are not prepared to yield our assent to the proposition thus broadly stated; but we must consider the refusal in its connection with the facts of the case, as before the jury.   It possibly may, although the inference is otherwise, have been questioned whether the Bank at Montgomery was not the holder of the bill, as well at the time of suit brought, as at the time of its dishonor, and in that view the rule declared in Stephenson v. Primrose, that the parties residing in the same place, the notice should have been personal, or left at the defendant's place of business, would govern the case.   To obviate the effect of this rule, proof was given of a usage of the Bank *to give notice through the post office,* and the question now is, whether it is competent for a Bank to establish such a rule, so as to bind the parties to a bill *payable at the particular Bank?*   It must be borne in mind, that the question is not whether the Bank could dispense with notice altogether, but is merely as to the mode by which it shall be given.   Notice to the indorsers, and drawer, is unquestionably a pre-requisite, in general, to charge them, and it is highly probable that no rule dispensing with it would affect a party, unless expressly assented to.   But the mode of notice, is a matter which is in its nature subject to modification and change.   Although the post is now generally recognized as a legal mode, there must have been a period in the history of commercial paper when that was unknown.   So, too, the introduction of steam navigation between the old world and this, may have the tendency to introduce changes in the transmission of notices with respect to foreign bills : the same results may flow from the electro-magnetic telegraph.   Is then the mode of giving notice, a fixed and unchangeable rule, incapable of modification,

without the consent of parties ? We think this question must be answered in the negative, and other Courts have come to the same and similar conclusions, after the fullest consideration. In Renner v. The Bank of Columbia, 9 Wheat. 581, the question is very fully examined by the Supreme Court of the United States, and the decision was, that a Bank, by usage, could fix the fourth, instead of the third day of grace, as the period for demanding payment, preparatory to fixing the liability of an indorser. The Court assumed that days of grace were entirely the creation of custom and usage, and if the custom of a particular Bank was known to the party, it entered into and became a part of his contract. In the case of Mills v. Bank of the U. S. 11 Wheat. 431, the same Court carried the doctrine yet further, and held a party governed by the usage, although knowledge of it was not brought home to him, by reason of the bill appearing on its face to be made negotiable and payable at the particular Bank. That is this case, and instead of reasoning it out, from principles recognized and admitted almost universally, we shall content ourselves with a reference to these cases. We cannot perceive a distinction between a custom to vary the mode of giving notice, and one which varies the time for making a demand of payment. A great number of cases involving  the same general principle, are collected in Cowen & Hill's notes, page 1412. We therefore conclude, that it was competent for the Bank at Montgomery, to establish a rule, that notice might be given to parties through the post office, although resident in the same place, and that such rule was obligatory upon the parties to all bills expressing upon their face to be payable at that Bank.

3. The prayer for the charge numbered six, in substance, asserts, that evidence of usage cannot be given in evidence under the common form of declaring, and that the count should contain an averment of the usage which distinguishes the case from the general law. The fact alledged is, that the defendants had notice, and that was as well established by showing that it was placed in the post office, as it would be by proof that it was left at their place of business. In either case, the conclusion is arrived at, by proof of a fact which leads to that result. The case of Jackson v. Henderson, 3 Leigh, 197, does not involve the same question as presented by this prayer. A distinction

may well exist, between evidence of presentment at a day different from that provided by the general law, and the evidence of notice. In the one case a different fact is proved, but in the other, the fact alledged is proved, but by different evidence. We think, therefore, there was no necessity to aver tne special custom.

This consideration of the case is sufficient for the decision of all the questions insisted upon here, and the result is an affirmance of the judgment.