## PHILIPE *vs.* HARBERLEE.

1. *Notice of protest; how given to indorser.*—Notice of the protest of a note or bill of exchange may be given to an indorser through the postoffice, notwithstanding the place where payment was to be made and where the demand and protest were made was that of his residence, when the holder, who is the owner, lives elsewhere.

2. *Negotiable note; consideration of.*—A negotiable note imports a consideration, and when it suspends the collection of an original debt, such suspension is a sufficient consideration for the promise to pay the debt of another.

3. *Judgment; when amended.*—A judgment may be amended by correcting an error in the calculation of interest, in the court of original jurisdiction, on the application of either party, at any time within three years from its rendition.

APPEAL from City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The facts appear in the opinion of the court.

GEO. N. STEWART, and DARGAN & TAYLOR, for appellants. The court ruled that notice of protest of the note given by mail, though not received in time, was sufficient to hold the indorser, because the holder resided abroad.

We admit the rule, but deny its application. We contend that the party who held the note, whose duty it was· to have it protested and to give notice, was the bank, and therefore a resident of the same place as the indorser, and that, therefore, personal notice or notice received in time was necessary.

That the bank is such holder, and is to be so considered, is the settled decision of the Supreme Court of the United States, as found in 6 How. 257, 258. That case is full in point for the appellant in this case, and now the question is whether or not this court will adopt the rule as there laid down, or lay down the law of this State in conflict with the rule of that court.

Let us see how far this State is committed against this uniformity of rule, and whether it is not possible now to establish this uniformity, and thus be relieved from this evil.

The first case referred to as the duty of the holder, is that of *Stephenson v. Primrose*, 8 Port. 155. In that case, the parties residing in the same place, personal notice was required. There the rule was laid down so strictly that although the notary went twice to the place of business of the indorser, to give the notice, and left the notice in the postoffice only after such ineffectual effort, it was held insufficient.

The next case is found in *Foster v. McDonald*, 3 Ala. 34. There the holder appeared to be J. F. Comegys, cashier of the bank at Tuskaloosa, and the defendant, Foster, lived there also. McDonald was the plaintiff, he living at Mobile. The court said that the legal inference was, that McDonald had acquired the note after protest, and that

the cashier was the holder at the time of protest, and consequently that notice by mail was insufficient, personal notice being required ; and the judgment which had been rendered against the indorser was reversed for that cause.

That case was precisely like the case here, in this, that the true holder did not reside in Tuskaloosa, but in Mobile, but this was not shown by the note.   The court held the cashier to be the holder, and nothing appeared to the contrary.   It is true that Judge Ormond expresses the opinion that the notary might have sent the notice to McDonald at Mobile ; and he might have sent it to Foster, if he was the true holder, and that this would have been sufficient.   This, however, is not authority ; it is only *dicta*, and not the point of decision of the case.

The same case came again before the court in *Foster v. McDonald*, on the same facts, except that it appeared that the holder was McDonald, and that he resided in Mobile.   The note having been protested at Tuskaloosa, and the notary having at Tuskaloosa placed the notice in the postoffice.   As thus presented, the case is precisely like the one before the court.   The cashier was the apparent holder, the true holder or owner living elsewhere, the notice given by the notary by mail to the defendant living at the same place as the bank.   (The only difference was, that there was no proof that the notice was not received in time, whilst, in our case, we prove that it was not received in time.)

What was the decision of the court ?   The court did not decide that notice by mail in this case was sufficient, but decided it on the ground that the indorser having " demurred to the evidence," the court said, " the jury might have inferred that the indorser did receive the notice in reasonable time ;" and on this ground they decided against the indorser, commenting fully on the effect of a demurrer to evidence requiring them to incline that way—and thus the head note of this case recites that the notice by mail is not sufficient, unless it comes to the hands of the indorser in time, and that is the result of that case.

It is an authority for the plaintiff in error, which never

has been overruled, except by *dicta*, as we shall see on examination of the subsequent cases.

The next case is that of *Gindrat et al. v. Mechanics Bank of Augusta*, 7 Ala. 324. In that case, the bill was sent by the Bank of Augusta to the State Bank at Montgomery, for collection. It was proved that the bank at Montgomery had made and published a rule that its notices of protest should be sent by mail, and also proved it to be the usage of that bank to put the notices in the postoffice, and that Gindrat dealt with the bank. It is true that Judge Goldthwaite, who delivered the opinion of that court, said and thought that the note was sufficient, without the proof of the rule and the usage ; yet he sustained the rule and the usage as being properly admitted as evidence. The judgment against the indorsers was affirmed by " the court."

Here we have the case decided on the point before the court as authority, and the *dicta* of Judge Goldthwaite that the rule and usage were not needed ; but this is Judge Goldthwaite's opinion ; the decision as authority rests on the whole case, on the rule and usage of that bank, which were held good. Therefore, it is not authoritative or binding as authority beyond it. It does not overrule *Foster v. McDonald*, as authority.

The next case is *Greene v. Farley*, 20 Ala. 322. There, it seems, the only question was, whether the notary was a competent person to give notice in case of a domestic bill. The court say he could do so as well as in the case of a foreign bill. Here we have again the opinion of Justice Goldthwaite, who cites the case of *Gindrat et al. v. Mechanics Bank of Augusta.* But the case was a clear one, having no point bearing on our case, except that it decided that a notary was a proper person to give notice where the protest was made abroad, and had to be sent by mail. We do not contest in any way that decision.

The case of *Ray v. Porter*, 42 Ala. 327, was also a case where the proof of usage and custom was relied on, and the opinion given by Judge Byrd, shows that the case of *Gindrat et al. v. Mechanics Bank of Augusta* was made the foundation of the decision, and the proof of usage was held

to be admissible to sustain the postoffice notice. The last case on this question is that of *Bibb v. McQueen*, 42 Ala. 468. This was again a case where proof of the usage of the bank was given in evidence to justify the notice by postoffice. The case of *Gindrat et al. v. Mechanics Bank of Augusta* was relied on and made the basis of decision. Judge Byrd says in his opinion, that no proof of usage was necessary, relying on the opinion of Justice Goldthwaite in the case of *Gindrat et al. v. Mechanics Bank of Augusta*. But this again was *dicta;* the case decided was on the usage proved, and it is authority on that point, and on nothing beyond.

Now we see that, although we have the opinions of several of the judges that where the holder is absent the notary may send the notice to him or to the indorser, by mail, although the parties may live in the same town; yet, when closely examined, it will be seen that there is no case where such decision was made under circumstances which create the binding effect of judicial authority. The court can, therefore, now follow the decision of the Supreme Court of the United States, without overruling any decision of this court.

The overruling would extend only to the opinions of individual judges, not on the points actually decided by the court, mere *dicta.* · The naked question now presented for the first time, never before was submitted for the decision of this court.

The question, then, being in fact an open one, what shall be the decision of the court?

In the case now before us, there was no usage proved, other than what was said by the notary that it was his practice to give personal notice where the indorser lived in the same town.

The notary knew the indorser well.

The indorser was present at the time, and the notary knew where his office was, and also where his dwelling was.

The fact was proved that the notice was not received in time, and this was not left open to inference.

The reason why the notice was not perfected is shown,

39

and the fault is brought home to the holder or plaintiff himself. The notary did not know that a formal notice was in fact needed. He did suppose, and was athorized to believe, that Philipe was the holder of the note. The bank did not know it either. If paid, the money would be drawn by Sawyers, a resident, who left it with the bank for collection. But it is not shown that the notary even knew this; Sawyers' name was not on the note either.

The rule that it was competent for the notary to send the notice to Sawyers and to the plaintiff, and that each had twenty-four hours then to give notice, and thus delay the time, can not be invoked, and we need not consider of it, as this was not done, and the plaintiff did not give the notary the means to do it.

The fact is that the notice was not received in time, and yet all the agents, Sawyers, the bank, and the notary, are without blame; each did his duty. The plaintiff alone is chargeable with the default; he can blame no one but himself.

The indorser here is a surety merely, and can not be charged, except by strict legal liability. There is no equity against him, and no inferences are to be indulged in.

All the decisions of this State admit that the notary was a competent party to give the notice.

The case of *The Bank of Mobile v. Marston*, 7 Ala. 108, decides that the notary is liable to the holder, if he gives an improper notice, or fails to give it. Also, that if he undertakes to give the notice to the holder, he must do it effectually.

This establishes his right and duty in this respect as the proper party to do the act.

The case of *The Bank of Mobile v. Huggins*, 3 Ala. 206, decides that the bank is the agent of the owner, bound to have protest made, and to obey all instructions of the owner. It establishes that the law of principal and agent holds between them.

The case of *Bartlett v. Isbell*, 31 Conn., decided in 1863, holds that the due diligence to give notice attaches to the notary, and not to the owner; and that if the notary who had the actual possession of the note has used due dili-

gence, although ineffectually, it is sufficient to charge the indorser; that it is "the holder for collection" who is to be treated and considered as the holder, and no one else·

The case of *Bowling v. Harrison*, 6 How. 248, decided in 1848, and before referred to, is the leading case on this subject, and settled decision of the Supreme Court of the United States. It settles conclusively that the bank, or notary, whoever has possession of the papers, is the holder for the purpose of giving the notice; and that notice by postoffice is not, in a case like this, sufficient. The case is fully in point.—See, also, 3 Kernan, 549; 1 Yerger, 168; 2 Hill (N. Y.), 590; 20 Johns. 270; 18 Maine; 5 Penn. 181; 17 Wisc. 157; 16 N. Y. 235; 5 Cowen, 2ʋ3.

Shall the authority of this case, which rules and is obeyed all over this great extent of country in every State and Territory in the federal courts, be overruled, and this State form an exception to embarrass commerce on this subject of general interest? Or shall uniformity prevail, so beneficial to all commercial men?

It will be needless to cite any more of the very numerous authorities on this point. It is the established doctrine of the courts at this day.

There is another point in this connection which has come under consideration in other courts, which is, that it was the fault of the plaintiff below himself that the notice was not given. It was his business to give the notice; true, he can do so by an agent, but he must instruct his agent of all that is material for him to know, so that he may do it properly. The act of his agent is his act, and he is responsible to us for the acts of his agent. He did not put his name on the paper, and no one told the notary that the holder was other than what the paper itself showed. Philipe being the only name indorsed on the note, the notary understood, that if paid, the money would go to the credit of Philipe.—*Foster v. McDonald*, 3 Ala. 34. Believing that the note belonged to Philipe, the notary did not suppose that notice to him was strictly necessary. He says his habit was to give personal notice in such cases as this, and he would have done so if he had known the holder was a non-resident. The mishap of the plaintiff is, therefore,

solely owing to his omission to make known the fact that he was the holder. That fact was unknown to the bank, as well as to the notary; for Sawyers had not disclosed it to the bank.

Now the holder can not shield himself to our injury, by reason of the ignorance of the notary of what he should have communicated to him for his guidance.

This principle is asserted in the case of *Haley v. Brown*, 5 Penn. 180. In that case, the proper notice was not given because the notary was not correctly informed of the place where it should be sent. The court said this was not sufficient to excuse the plaintiff; that it was the duty of the owner to instruct the notary as to the residence of the indorser; and if he did not know it, he must make diligent inquiry to find it out; that the notary was his agent. *Preston v. Dayson*, 7 La. 11. was cited, to show that the owner can not avail himself of the ignorance of the notary, his agent, to excuse himself.

In the case of *Lawrence v. Miller*, 16 N. Y. 235, the rule is extended still further. There the notary sent to a person of the name of the indorser, which he found by consulting the directory of the city, supposing he was the party. But it turned out that there were two of the name, and he had found the wrong person. The case went by appeal from the supreme court to the court of errors, where the judgment in favor of the indorser was affirmed. It was held, that the holder having given no information to the notary, the fault lay at his door, and that he could not charge the indorser.

The necessity of uniformity of decision on commercial questions has been so strongly urged by judges, to prevent confusion, that it is believed, when it appears that such a concurrence of decision can be established, the court would readily create it, unless some insuperable objection is found to exist.

The proof was that the note was given by Wolffe & Co., for an antecedent debt due by them to Harberlee; that Philipe was an accommodation indorser, and that there was no agreement whatever binding him, other than the fact of the indorsement itself.

In the case of *Rutledge's Adm'r v. Townsend, Crane & Co.*, 88 Ala. 706, the notes given were made payable at a future time, as well as in this case, but the original debt was not extinguished there, although the surety was a joint maker with the principal; and the original debt was still in force, as here. There was nothing in the case before the court to show that the original debt was extinguished; this idea was negatived when the bill of exceptions states that there was no other agreement. The note was, therefore, a collateral security only. The court erred clearly in the refusal to give the charge asked for, and in giving the additional charge that the execution of the note alone was sufficient evidence of a consideration. There was a good consideration as to Wolffe & Co., the makers, but none as to the indorser, as was held in 38 Ala. 706, which cause the court wrongfully overruled. It was in point for the defendant below.

J. LITTLE SMITH, *contra*, maintained, in an elaborate argument—

1. That the settled law of Alabama is as is charged.

2. That the law has been so settled since 1845; that it was so held in this State as early as 1841; that this court declared, as late as the January term, 1869, that the law as stated was so well settled in Alabama, that it could not then be departed from by the judiciary, and that the same doctrine has been held by the present court, as late as the June term, 1869.

3. That, according to the contract, the right of Harberlee to recover against Philipe was subject to the condition, that payment of the note at its maturity should be demanded of the makers; and upon their failure to pay, then that Philipe should be notified according to the laws of Alabama, where the note was payable; and that whenever this condition was complied with, that the liability of Philipe as endorser was fixed.

4. That the law of Alabama, as to the mode of complying with this precedent condition, is to be determined by the decisions of its judicial tribunals as they stood at the time of the protest; that is to say, at the performance of

the condition, and Harberlee's right to recover was fixed when the notice was given, according to such decisions.

5. That even if it should be held, that, on principle, those decisions are wrong, yet the contract that had become valid and binding on Philipe, under the construction of the Alabama law, as construed by its courts at the time, can not be impaired by any subsequent decision changing the construction of the law on the manner of giving notice.

6. If there be a conflict between the decisions of the supreme court of Alabama and those of the United States courts, those of the State must be adhered to. The decisions in Alabama would control even the United States courts in such a case as this. This is not a question of general commercial law; for notes are not protestable under the general mercantile law, but the rules of the commercial law relating to protest and notice are made applicable to such notes only by our statute, and the commercial law referred to in the statute of Alabama must mean the commercial law as it was ruled by its own courts when the statute was incorporated into the Code without change; so that the principle of *Gindrat et al. v. Mechanics Bank of Augusta* is incorporated into the statute, and must be followed until the statute is repealed.

7. That the commercial transactions of this commercial State, whose exports of cotton alone exceeds forty millions annually, in regard to notices and protests of notes, have been based on a rule declared by the highest judicial tribunals in the State to be the correct rule, and to now hold that all protests and notices made under the rule were worthless, and that all parties to unpaid bills are no longer to be held according to the rule, but that they are held or released under some new and different rule, would, in all probability, be ruinous. This is, therefore, pre-eminently a cause where the doctrine of "*stare decisis*" should be upheld; for the rule as construed is a rule of property, which is immeasurable in the extent of its effects. If it is advisable that some new rule should be adopted, the legislature can declare such rule as operating on future transactions, without destroying vested rights, and the judi-

ciary should leave that matter to the legislative department.

B. F. SAFFOLD, J.—The appellant was the payee and endorser of a negotiable note drawn by Wolffe, Price & Co., due sixty days after date, and payable at the Mobile Savings Bank. The note was the property of the appellee, who lived in New Orleans, and was sent by him, through Mr. Granger, to Mobile for sale or collection. Granger placed it in the hands of Petty & Sawyers for that purpose. They, not selling it, left it at the bank for collection, where it was delivered to a notary, who, at the request of the cashier of the bank, presented it to the paying teller of the bank for payment, and on being answered " no funds," protested it, and gave notice through the postoffice to the endorser residing in Mobile, where the bank was located. The notice was sent on the 13th of February, the day the note became due, and was received by the endorser on the 16th of the same month.

The appellant objects to the charge of the court, that the notice of protest given to the indorser through the postoffice was sufficient, if the holder of the note resided out of the State, notwithstanding his agent who had it for collection lived in Mobile. He admits that this is in accordance with the adjudications in this State, but insists that it is different elsewhere, and especially in the federal courts, under the authority of *Bowling v. Harrison*, 6 How. 248. In that case, the decision was emphatic that the bank, which had the note for collection, and the notary who made the protest, were holders for the purpose of giving notice ; and that where an endorser lived in the same town or city where the bank was located and the demand made, and where the note was payable, the notice to him must be given personally, or at his residence or place of business. This is certainly high authority, and extensive in its operation, applying to all cases of foreign commercial paper brought under the cognizance of the federal courts.

We might conform the decisions of this court to that of the United States supreme court, for the sake of uniformity, if the people of the State had not transacted their

business in compliance with a different rule announced by their own tribunals, upon whose consistency they have a right to rely.—*Gindrat v. Mechanics Bank of Augusta,* 7 Ala. 324; *Greene v. Farley,* 20 Ala. 324; *Bibb v. McQueen,* 42 Ala. 408; *Tyson v. Oliver,* 43 Ala. 455.

The law is well settled, that if the holder and the indorser reside in the same town or city, the notice must be personal, or left at his residence or place of business, but if not, it may be sent by mail. Is the agent for collection, or the notary, in any legal sense the holder? They have no such beneficial interest as will entitle them to sue on the paper, and are not responsible otherwise than as an agent or officer. The amount of the notary's bond is incompatible with his responsibility for every failure to fix the liability of an obligor.

In addition to this, the postoffice has become, in most cases, the surest and speediest mode of communication. In cities where a penny post is established, the carriage of letters is entrusted to persons whose exclusive business it is, and whose liability for negligence can better be enforced than that of a casual or special messenger. We are not persuaded that the rule in this State is not as good as any other.

As to the consideration necessary to bind the endorser, the evidence shows that the principal debtor was indebted to the plaintiff for merchandise sold for him which had not been accounted for, and that the creditor was pressing for payment when he received this note, endorsed by the appellant, and payable in sixty days. Nothing is proved in reference to the extinguishment of the prior indebtedness by the note, except what is indicated by the acts of the parties as here related. The note imported a consideration, and was payable at a future day, suspending the remedy upon the original debt. That suspension was a consideration for the new promise.—*Rutledge v. Townsend, Crane & Co.,* 38 Ala. 706.

There was no error in amending the judgment by correcting the mistake in the calculation of interest.—Revised Code, § 2807.

The judgment is affirmed.