# John v. The City National Bank of Selma.

## Action on Bill of Exchange.

1. *Indorser; what necessary to bind.*—Where the holder and indorser of a bill of exchange both live in the same city, where the bill is payable, the indorser is entitled to personal notice of dishonor, and will not be bound unless such personal notice was given, or a sufficient excuse shown for not giving it.

2. *Same; what excuses not giving personal notice.*—It is a sufficient excuse

[John v. The City National Bank of Selma.]

for not giving an indorser personal notice of the dishonor of a bill of exchange, that the notary, on the day of the dishonor of the paper, called at the indorser's place of business, *during business hours*, to give him notice of the dishonor, and found the office locked and no one there with whom notice could be left; and in that event notice, properly addressed, deposited in the post office, will suffice.

3.   *Notice sent by mail; what not necessary to proof of.*—It is not necessary to give notice to produce the notice sent by mail, as a preliminary to making proof of its contents.

APPEAL from Dallas Circuit Court.

Tried before Hon. GEORGE H. CRAIG.

This was an action brought by the appellee, The City National Bank of Selma, against the appellant, S. W. John, to recover the amount of a certain draft, on which John was endorser. The case was tried on a plea of *non assumpsit* and a special plea setting up that defendant was only an accommodation endorser for one M. J. Saffold, and no notice of its dishonor had been given him.

On the trial the plaintiff introduced the bill of exchange, and offered to introduce the protest thereof. The defendant objected to the protest as evidence. The court admitted the protest as evidence of the fact of protest, but not as evidence of notice of dishonor to the defendant, and the defendant excepted. The plaintiff then introduced one Parish, who testified that he was the notary who protested said bill of exchange; that on the day the bill matured, he presented it at the counter of the City National Bank of Selma, before 2 o'clock, P. M., for payment, and was answered by the teller, "no funds"; that in the afternoon of the same day, and during business hours, he went to the office of the defendant in the city of Selma to serve notice of the protest upon him; that he found the office locked and no one there, and that he then deposited the notice of the protest in the post-office at Selma. The plaintiff here asked the witness to state the contents of the notice he carried to the office of defendant. To this question the defendant objected, because it called for secondary evidence, and no predicate for such evidence had been laid. The counsel for plaintiff stated, "that he did not have the notice and demanded it now of the defendant's counsel, who stated that the demand came too late, and that he did not have the notice in court." The court overruled the objection, and the defendant excepted. The witness then stated that the notice was in the usual form and informed the defendant of the dishonor of the bill. This witness further testified that he was a notary, and had been accustomed to protest bills for the plaintiff and to send notices of protest through the post-office, and that this was the custom of the plaintiff. Upon cross-examination this

witness stated that he knew it was before sundown when he went to the office of defendant, because the stores were open and people were going about the streets, and because he saw the sun shining through the alley. It was shown that both plaintiff and defendant were residents of and did business in the city of Selma, and that the business hours of the plaintiff were from 9 o'clock, A. M., to 2 o'clock, P. M., and that no other notice was given the defendant except the notice deposited in the post-office by the notary, as stated in his testimony. The cashier of the bank also testified that it was the custom of the bank to drop notices of protest in all cases in the post-office, and its business hours were as stated by the notary; that the bulk of the business of Selma was done between the hours of 9, A. M., and 3, P. M.; that during the summer the wholesale grocers closed their houses about 7, P. M., and that some of the tradesmen kept their houses open until 9, P. M.

The defendant, as a witness for himself, testified that at the time the bill was protested he was in Selma; that at this time there were in his office four practicing lawyers and one office boy; that it had always been the custom of his law firm to open their office in the morning and to close it at 6, P. M.; that at no time after the office was open was it locked until 7, P. M., not even when they went to dinner; that about ten days after the maturity of the bill sued on, he went to the office of the plaintiff on business, and while there the cashier stated "that the bank would have to collect the bill of him," and he asked what bill, and was informed that the bill sued on was referred to; that he then stated to the cashier that he had received no notice of the protest, and was informed that the notice had been placed in the post-office; that he enquired at the post-office for the notice, but found none; that on his return from the North, about three weeks afterwards, he found the notice in his desk, where it had been placed by his office boy, who had obtained it from the post-office. This witness was then asked by the plaintiff to state the contents of the notice he found on his desk. To this question the defendant objected. The court overruled his objection, and he excepted. Witness stated that he did not remember the contents further than he at the time understood from it, that the bill sued on had been dishonored. C. W. Hooper, a witness for defendant, testified as to what were business hours in Selma, among the merchants and bankers, substantially as the witnesses for the plaintiff; he further testified that it was the habit of the wholesale grocery houses to close up about sundown; that the merchants usually shipped in

the morning and received freight in the afternoon; that the banks sent around notices of matured paper in the morning, and that in the afternoon, after business hours, merchants frequently attended to their payments, for this purpose going into the bank at the side door, and paying bills to the bank as late as 6 or 7, P. M. E. W. Pettus, a witness for the defendant, testified that he was a lawyer by profession, and that the lawyers generally remained in their offices all day and sometimes at night; that in the summer the heat of the sun was so great, that many of them did not remain in their offices.

The court, at the written request of the plaintiff, gave the following charges: "1. The law requires that when the holder of the bill, and the endorser sought to be charged, reside in the same place, the holder will be required to give personal notice of the protest, unless he is excused from so doing, and if a man has an office or place of business that is the place where he is usually to be notified of protest, and if the jury believe from the evidence that the notary public went to the office of the defendant before sundown, and if they believe that at that hour of the day, when the notary went to the defendant's office, was during the usual hours of business in Selma, and if the notary found the office locked and no one there with whom to leave the notice, then the holder did what the law required him to do in order to give notice. 2. The question of what are business hours in Selma is a question for the jury to determine from the evidence adduced before them by the witnesses, and they are not to have reference alone to the office hours of the defendant in this cause, or to the office hours of any particular trade or profession, but must consider and give due weight as to what are the general hours of business in Selma. 3. The certificate of the notary, taken in connection with the evidence of Parish, is to be taken as evidence that the protest of the bill was regularly made, according to law, on the day of the date, and that the bill was formally protested in accordance with that certificate." The defendants separately excepted to the giving of each of these charges, and requested the following written charge: "1. If the jury find, from the evidence, that at the time the note sued on matured, the defendant had a well known residence and a well known place of business in Selma, and that the defendant was in Selma on the day of the maturity of the note and the day afterwards, all of both days following his usual custom of business; and if they further find from the evidence that no notice was given to defendant of the dishonor of said bill sued on, either the day of the dishonor of the bill or the next day: then if the jury

further find that the notary went to the office of defendant about sundown on the day the bill was protested, for the purpose of giving notice of dishonor of the bill, and found the doors closed, and that this was the only effort made to give notice, then the jury, under the evidence, if they believe it, must find for the defendant." This charge the court refused to give, and the defendant excepted.

The various rulings, to which exceptions are reserved, are now assigned as error.

W. C. WARD, for appellant.—Notice to produce a paper comes too late during the progress of a trial, and secondary evidence of the contents ought not to be admitted.—*Bates v. Ridgeway*, 48 Ala. 611, and authorities cited. The first charge given, at the request of the plaintiff, was erroneous. The notary had all the next day to give notice and he made no effort to do so, and the charges assert that what he had done, which at best was but an unsuccessful attempt to give notice, was all the law required to be done. The second charge was too general; that which determines what business hours are, is when the bulk of the trade is done; besides, if the business hours of the defendant were known to the notary or the holder, it would be preposterous to attempt to charge him with notice by going to his office when his day was done.—Danl. on Neg. Insts, vol. 1, p. 448, § 603. The charge asked by the defendant should have been given. What is sufficient or reasonable diligence, when the facts are ascertained, is for the court to determine.—Dan. on Neg. Insts. vol. 2, § 1058.

W. R. NELSON, *contra*.—There was no error in allowing proof of the contents of the notice of dishonor, even if there had been a demand made for the production of the paper itself.—*Eagle Bank v. Chapin*, 3 Peck. 182; Sharswood's Byles on Bills, marg. p. 302; Wharton Ev. vol. 1, § 81, note 3. The notice sent to the business office of John was sufficient, if sent in business hours, even though no person be found in attendance.—Byles on Bills, 280. Where the person had a dwelling house and a business office in the same town, a notice sent to either place is sufficient.—Byles on Bills, 424; 3 McLean, 96; *Stephenson v. Primrose*, 8 Porter, 155. In this last case the court held, that if a party absent himself during business hours, without leaving some one to attend to his interest, the holder will be excused from giving notice. See, also, 1 Pick. Rep. 413. It was for the jury to say what were business hours, and the charges given left this question fairly to them. What are business hours, are not to be

[John v. The City National Bank of Selma.]

determined by the custom of any particular trade, but with respect as to what are the general business hours of the place.—Dan. Neg. Insts. § 601. In two cases, presentment at an attorney's office at 8, P. M., was held sufficient.—*Triggs v. Newnham*, 1 Car. & P. 631; *Morgan v. Dawson*, 1 Stark, 114.

STONE, J.—When this case came before this court at a former term, the record failed to show that the notary's visit to defendant's office was within business hours.—See *John v. City National Bank of Selma*, 57 Ala. 96. In that case the Circuit Court had instructed the jury, as matter of law, that the proof of notice was sufficient. The proof made in that case was, that before sunset on the day on which protest was made, the notary in person carried a written notice of protest to defendant's law office; that he found no one there, and that the law office was closed and locked. Thereupon, without further search for Mr. John, he deposited the notice in the postoffice addressed to Mr. John. This court, after stating that the burthen of proof rested on the holder to show notice, or an excuse for 'not giving it, added : " If the absence of the indorser from his place of business when it was visited for the purpose of giving him notice, is relied on as an excuse, it must be shown the absence was *during hours of business*. It is only during such hours it is reasonable to expect to find him there, or any one with whom notice could be left for him. The evidence is very indefinite as to the hour of the day at which the notary visited the office of the indorser. No note of the time seems to have been made; it was in the afternoon of the day of dishonor, and *before sundown*, according to the recollection of the notary. What were *business hours* in Selma is not shown; and for aught that appears, the visit may have been at an hour when the notary could not justly and reasonably expect to find the indorser there. The visit may have been made to that office with the bare hope of finding the indorser, and relieving himself from further trouble in giving notice. The residence of the indorser was known, and he was not sought there. Notice on the succeeding day would have been sufficient, yet it was not given; but, not finding him at his place of business in the afternoon, and it may have been at an unreasonable hour, notice deposited in the post office—the mode of notice the least troublesome to the notary—is the resort. When the facts are ascertained, the sufficiency of notice, or of the excuse for not giving it, is a question of law. The Circuit Court erred in holding there was due notice of the dishonor given by the deposit of notice in the post office ; or, that the absence of the indorser from his place of business,

as it is shown by the evidence, was an excuse for the failure to give notice." The substance of what was decided in that case is, that the holder and indorser being residents of the same place—the city in which the protest was made—personal notice of the dishonor was required; and under the evidence disclosed in that record, no sufficient excuse was shown why such personal notice was not given. In holding that notice deposited in the post office was insufficient in that case, this court simply followed many former rulings. *Stevenson v. Primrose*, 8 Por. 155; *Gindrat v. Mechanic's Bank*, 7 Ala. 324; *Greene v. Farley*, 20 Ala. 322. See, also, *Tyson v. Oliver*, 43 Ala. 455; *Phillipe v. Harberlee*, 45 Ala. 597. So, in the second branch of the proposition, this court only followed *Stevenson v. Primrose, supra*. In that case this court said, "to make the excuse available, it should have been shown, not only that the witness called at the plaintiff's place of business, but it should appear further that the visit was made at a seasonable time—viz: *within the hours of business*." True, in the former opinion in this case, mention is made of the fact that the notary did not call at the residence of Mr. John, and that he did not renew the effort on the next day to find him. The opinion, however, does not declare on what ground the diligence is adjudged insufficient. The failure to show that the call was made within business hours, was, as we have seen, fatal to the legal sufficiency of the excuse.

The proof in the present record, is different from that in the former one. Witnesses testified, *pro* and *con*, on the question, what were business hours in Selma; and the question, whether the witness' visit was within business hours, was fairly submitted to the jury in the charge of the court. The verdict proves this issue was found in favor of the plaintiff. It is, then, an established fact in this record that the notary, on the very day on which the bill was dishonored, and within business hours, called at the office of the indorser to give him notice of the dishonor, and found the office closed and locked, and no one there with whom notice could be left. The exceptions to the charges raise the question, was this sufficient, or should the notary have visited the indorser's residence, or repeated the call the next day? In the case of *Crosse v. Smith*, 1 Maule & Sel. 445, notice was sent by a clerk, who, between 10 and 11 o'clock, A. M., knocked at the counting-house door of the persons sought to be charged, and found nobody there. Lord Ellenborough, pronouncing on the sufficiency of this excuse, said: "That brings it to the question, whether sending the bill by a clerk, after 10 o'clock, and knocking and waiting at the counting-house

door, was sufficient notice in point of law; and we think that it was." He cited and approved Lord Eldon's similar ruling in the case of *Goldsmith v. Bland*, where "the only notice of the dishonor of a bill was by a clerk of the indorsee, who went to the counting-house of the indorser, found the counting-house shut up and no person there; saw a servant girl, who said nobody was in the way, and he then returned without leaving any message." In the case of *Allen v. Edmonson*, 2 Car. & Kir. 547, Baron Rolfe ruled that if "a party send a messenger once, in due time and during the hours of business, to the place of business of another party who is entitled to have notice of the dishonor of a bill, for the purpose of giving such notice, and there be no one there to receive it, that is equivalent to verbal notice." Of similar import is the case of *Lord v. Appleton*, 15 Me. 270. In Chit. on Bills, marg. 453, it is said: "Sending a verbal notice to a merchant's counting-house is sufficient, and if no person be there in the ordinary hours of business, it is not necessary to leave or send a written one, nor is it necessary to make inquiries after the party so as to give him notice elsewhere." And, on page 471, the same author says: "If the drawer has a counting-house where he transacts business, and at which the bill was addressed, it suffices to apply there for the purpose of giving notice, without attempting to give or leave notice at the residence of the drawer." To the same effect is Bayley on Bills, 273; Byles on Bills, marg. 280; Story on Bills, § 300; Thompson on Bills, 509; Daniel on Neg. Insts. § 1016; 1 Parsons on Notes and Bills, 487. The last two elementary authors, after stating the principle as above, express some doubt of the safety of the practice, but they cite no authorities in support of their doubts. Edwards, in his work on bills and notes, is not definite on this question.—See page 456.

On a question of commercial law, such as this, it is highly important that the courts of different States and governments, having commercial intercourse, should be harmonious in their rulings. We find the authorities as we have stated them above, and we do not feel at liberty to depart from them. The Circuit Court did not err in the charges given, nor in the charge refused.

It was not necessary to give notice to produce the notice sent by mail, as a preliminary to making proof of its contents.—Sharswood's Byles on Bills, marg. 303, and authorities on the brief of counsel.

Protest of bill for non-payment is a solemn official act of a sworn officer, charged with the duty. True, the protest is not the dishonor; it is the evidence of it. Notice of the

[Moore & Co. v. Robinson.]

dishonor, consists in "notice of the facts showing, or fairly implying that the drawee has refused to accept or pay the bill when presented for that purpose at the right time and place, or other acts done which are deemed equivalent." Edwards on Bills and Notes, 470; Code of 1876, § 1336.

The judgment of the Circuit Court is affirmed.