By the Court. Woodruff, J.
—The only point presented by the counsel for the appellant is, that due notice was not given to the defendant of the dishonor of the bill of exchange indorsed by him; all other exceptions taken at the trial were waived on the argument by the appellant; and the argument is, that inasmuch as the indorser resided in the same place in which the acceptor lived, and where the bill was presented for payment, and this fact was known to the plaintiffs, who were the actual or beneficial owners of the bill, notice should have been served on the indorser personally, or by leaving it at his residence or place of business in the city of New York, as early as the second day after the presentment, (the holiday being thus duly allowed,) and that the circuitous transmission of the notice to the defendant through the bunk .at Boston, and through the plaintiffs.at Jamaica, Vermont, was not in due season to charge the *473 defendant as indorser; and that if the plaintiffs had not known the defendant’s residence, it was, nevertheless, the duty of the notary to make diligent inquiry in New York for the purpose of serving the notice on the defendant, and the neglect of the notary to do so would have discharged the defendant, and would have made the notary responsible to the plaintiffs.
The general rule that where a bill of exchange has been negotiated by the indorsement of several parties, the holder has the next day within which to give notice of dishonor to any prior indorser whom he desires to look to for payment, and that each successive indorser who receives notice of the dishonor, has at least one day thereafter to give notice to any antecedent indorser whom he may desire to charge with the payment, is not controverted. Nor does the appellant question the rule that in such case if the party giving the notice, and the indorser whom he seeks to charge, reside in different towns, the former may send the notice by the first convenient mail of the day next after the receipt of the notice by himself.
But it is claimed that as to indorsers residing in the same town with the acceptor an exception arises, and they must be notified the next day (holiday excluded) after presentment; or at all events if the actual owner has knowledge of such residence, he cannot charge them without giving them such notice within the period last named; and that notices transmitted successively through holders for collection only, will not be in due season to charge such indorsers.
Mr. Justice Story, in his treatise on bills of exchange, having stated the general rules above referred to, says, (§ 292,) “ The benefit of this rule is not confined to holders for value—but if the bill has been transmitted to an agent or banker for the purpose of procuring the acceptance or payment of the bill, he will be entitled to the same time to give notice to his principal or customer, and to the other parties to the bill, as if he were himself the real holder, and his principal or customer were the party next entitled to notice; and the principal or customer will be *474 entitled after such notice to the like time to communicate notice to the antecedent parties as if he received the notice from the real holder, and not from his banker or agent. In short, in all such cases the banker or agent is treated as a distinct holder.”
Mr. Chitty states thé same rule, and that it has been frequently so decided. (Chitty on Bills, 521, 522.)
Chancellor Kent, in his Commentaries, (§ 44, vol. 3 page 108,) says:—“It is sufficient for an agent to give notice to his principal of the dishonor of a bill, and he is not bound to give notice to all the prior parties; and it then becomes necessary for the principal to give the requisite notice, with due diligence, to the parties to be fixed.”
Numerous .cases may be cit.ed to the like purport. In Scott v. Lifford, (9 East. R. 347,) a bill was deposited by the owner with his bankers for collection; it was dishonored on the 4th, the bankers notified the owner on the 5th, and he notified the indorser on the 6th, and the notice was held sufficient. So in Langdale v. Trimmer, (15 East. R. 291,) the indorsee of a bill deposited it for collection with his bankers in London; it was dishonored on the 25th ; on the 26th they returned it to the owner; ’on the 27th, he put into the post a letter to his indorsee, who lived out of town. The notice was held sufficient. In Bray v. Hadwen, (5 M. & S. R. 68,) the plaintiffs, residing in the country, owning a bill payable in London, deposited it for collection with their country bankers at another place. They forwarded it to London for collection; it was dishonored at London on the 14th, and notice was "sent to the country bankers by mail, and received on the 17th. They sent notice by the post on the 18th, to the owners, (the plaintiffs.) The latter received the notice on the 20th, and they afterward forwarded notice, which, through another indorser, reached the defendant. Held sufficient notice; In Rolson v. Bennett, (2 Taunt. R. 388,) it was held that the holder of a check does not lose recourse to the drawer by depositing it with his bankers for collection, although the banker has' one day after dishonor to notify the owner, and he has *475 another in which to notify the drawer, and so notice to the latter is postponed one day by such deposit. In Daly v. Slater, (4 Carr, & P. R. Rep. 200,) the drawer of a bill payable in London, resided at Oxford, England. The plaintiffs discounted the bill in Paris, and sent it to London to their correspondents, for collection. It was dishonored on the 6th, and the bill, on the next post day, the 8th, returned to the plaintiffs in Paris, by the London bankers, • and was received by the plaintiffs ; one of the ■ plaintiffs being in London on the 16th, instead of sending notice to the drawer at Oxford, returned the bill to the London bankers, and they sent the bill by the post of the l7th,to Oxford, where, on the morning of the 18th, the drawers were notified of the non-payment, &c. Lord Tenter den held, that - the course of sending the notices to Paris was proper, and the only doubt he expressed was, whether the plaintiffs should not, upon the receipt of notice, have, themselves, given the notice to the drawers by the post of the 16th, instead of returning the bill to their bankers, by means of which the notice was delayed one day.
In Colt v. Noble, (5 Mass. R. 167,) the plaintiffs, owners of a bill payable in London, resided at Madras—their indorser resided in the United States. The plaintiffs sent the bill to London to their agents there for collection; it was protested, and the agents returned it with notice to their principals, the plaintiffs, who, within a reasonable time after they received notice, forwarded notice to the indorser in the United S,tates. It appeared, that had the agents sent him notice from London, it would have reached his residence within three months after the protest; but,' by the circuitous mode adopted, the notice from Madras did not reach him until more than a year after - such protest, and yet ■ the notice was held sufficient to charge him in favor of the plaintiffs. The reasoning of Chief Justice Parsons is apt to the present case:
The case last cited is distinctly approved in Mead v. Engs, (5 Cowen R. 308,) where it is declared that banks who have no interest in the bill, but are mere agents to col *476 lect it, are yet, for the purpose of receiving and transmitting notices of dishonor, to be considered the real holders. It was there insisted, as it is'in this case, that the notary who protested the bill at Providence, where the acceptor resided, should have sent a notice directly to the drawer at New York, where the bill was drawn and dated. But the court held that a transmission of the notices by mail to several banks in succession, through whom it was transmitted for collection, was proper, although the notice did not reach the drawer so soon as it would had it been sent to him directly from Providence to New York. This case is binding upon us, even if the other authorities were not controlling upon this point; and this decision is reaffirmed in Howard v. Ives, (1 Hill R. 264.)
It is, therefore, to be deemed settled, that the course pursued in this case by transmitting the notices of protest to the Eliot Bank of Boston, and by that bank to the plaintiffs, and by them to the defendant, is in conformity with the general rule, and that the circumstance that the plaintiffs knew where the defendant resided when they delivered the bill for collection made no difference; for in many of the cases above cited, the owner of the bill , had the same knowledge.
Does the circumstance that the indorser (the defendant) resided in the 'city of New York, where the acceptor resided, create an exception?
If it does, then it must be upon some principle applicable to the subject, and none can be suggested unless it be that, living here, he would have received notice directly from the notary much sooner than he did receive it from the plaintiffs by mail. But, according to all the above cases, he is not discharged on that ground, for the same was true in the cases referred to.
Those cases hold that where he resides in another post-town he is not discharged, though a notice sent directly from the place of the protest would have reached him much earlier; and we can see no reason whatever for holding that if he' had lived in Brooklyn, a notice sent from "V"er *477 mont to Brooklyn would have been sufficient; but because he lived in New York, a notice sent to New York, is not. Nor have we been able to find any case in which the place of the indorser’s residence is held material in this respect. Nor any in which just such a notice as was given in the present case has been held insufficient.
It being once established or conceded that the several banks through whom a bill is in due course of business forwarded for collection are to be regarded, for all the purposes of receiving and transmitting notices, as if they were holders for value, then they are bound to notify the antecedent indorser, to whom they respectively look for payment, and are not bound to notify any other; and each of such antecedent indorsers in his turn may notify his precedent indorser, and charge him thereby.
A case may be supposed in which the holder of a bill, in bad faith, or out of the usual course of business, may send a bill to a distance, and through a useless circuit, in such a manner as unnecessarily to delay the notice to drawer or indorser ; and in such case the useless delay voluntarily caused may perhaps discharge the indorser; as if a holder in New York of a bill payable in Newark, under pretence of forwarding it for collection, sends it to a bank in New Orleans, by whom, through various intermediate banks, it is forwarded to Newark, and the notices, by returning through the same banks to New Orleans, and thence coming to the owner in New York, are delayed some weeks or months, it may be that an indorser in New York would be held discharged by the laches or fault of the owner; but if so, the concession would have no just application to a case like the one before us, where the holder in good faith, and in due course of business, forwards the bill in accustomed channels to the place of payment.
The question whether the indorser is to be personally served with the notice, or may be served through the mail, is not determined by the fact that he resides in the place where presentment is made, but is to be tested by the inquiry, whether the party who seeks to charge him by *478 notice, resides in the same town with the indorser; and the question within what time after presentment, must the notice be given, depends on the question, when did the party seeking to charge him, receive notice of dishonor— allowing to each intermediate holder one day, or till the next mail after receiving notice, to give it to the next preceding party.
The case of Smedes v. The Utica Bank, (20 J. R. 372,) does not conflict with these views. There, the plaintiffs in New York had sent a note to the defendants for collection. It was proved, and, in the opinion of the court, fully proved, that it was the established custom and general understanding between banks and their customers, at the place where the note was payable, for the bank to notify all the parties to the note, and the court held that the plaintiffs had a right to rely on that usage and custom, so that, as between the plaintiffs and the defendants, it was. the duty and undertaking of the latter to give notice to the indorsers; and the defendants' having neglected to give proper notice to an indorser living in the same place with the maker, were liable for such neglect. (See, Bank of Rochester v. Gray, 2 Hill R. 227 ; Spencer v. Ballou, 18 N, Y. R. 327.) There is no intimation that the rule would not have been the same in that respect, had such indorser lived in any other town. Nor was it held that, if the plaintiffs themselves, so soon as they received notice of the dishonor, had sent a notice to the indorser, he would not have been duly charged in their favor. The point was, that, having a right to rely on the giving of such notice by the defendants, and having, in that reliance, omitted themselves to notify the indorser, they had been damnified; the defendants had failed in the performance of their undertaking, and were liable.
What is said in relation to the giving of personal notice Avhen the indorser resides in the place where the demand is made, must be understood as said with reference to the already assumed or established fact, that the party whose duty it was in that case to give the notice, and who attempted *479 to do so, resided there also; and to the other fact, that the proof left it in doubt whether the notice he served was not put into the post-office, instead of being served on the indorser at his residence or place of business.
Like observations are applicable to the case of Ransom v. Mack, (2 Hill R. 587). Bronson, Justice, undoubtedly says that the rule still prevails that, where the party sought to be charged resides in' the same place where the presentment or demand is made, the notice must be served personally, or be left at' his dwelling or place of business.. But that is said in reference to a case in which the holder at that place made the attempt to charge the indorser; and the question was, whether the notice was properly given. The question whether a distant indorser, who was duly charged by notice, might not charge such resident indorser by a notice given with due diligence through the .mail, after such distant indorser received notice, did not arise, and was not considered.
The same learned justice afterward, in Sheldon v. Benham, (4 Hill R. 129,) recognizes the rule that, where the indorser and the party seeking to charge him reside in different places, the indorser may be charged through the mail; and also that notice being sent by the bank who holds a note for collection to the last indorser, he has the same day he receives the notice, and the day next ensuing, in which to notify prior indorsers; and in the case of the Cayuga County Bankv. Bennett, (5 Hill R. 241,) only states, when considered in reference to the circumstances of that case, that a holder, seeking to charge, in his own favor, an indorser residing in the same town with himself, cannot give notice by depositing in the post-office.
The case .of Lawrence v. Miller (16 N. Y. R. 235) did not raise any such question as is now under consideration. The plaintiff there was the holder of the note at its maturity, and employed a notary to demand payment and give notice of dishonor. The only notice given was not properly served, and the court held that, on the question of due diligence, the notary was the mere servant of the *480 holder, and the question was the same as it would have been had the holder in person, with all the information and means of knowledge he possessed, given the notice.
The authorities referred to seem to us to establish conclusively, and without any conflict of opinion, the sufficiency of the notice given in this case, to charge the defendant as indorser; and, as there is no exception relied upon but that which raised the question we have considered, we have no alternative but to affirm the judgment. The decision of the referee was not erroneous.
Judgment affirmed, with costs.