## CHARLESTON.

BIG SANDY NATIONAL BANK v. CHILTON et al.

Submitted January 15, 1894—Re-submitted on Rehearing January 15, 1895.—Decided April 13, 1895.

1.  NEGOTIABLE NOTE—NOTICE OF PROTEST.

    Where a negotiable note, indorsed by several parties, residing at different places, is made payable at a bank in the city of H., and before maturity it is discounted by a bank in the town of C., and by the last named bank it is indorsed to a bank in the city of H. for collection, and one of the indorsers resides in said city of H.

when said note matures and is presented for payment, and payment is refused, and the note is duly protested, the bank to which said note was indorsed for collection is only bound to give notice to the bank in C., its immediate indorser.

2. NEGOTIABLE NOTE—NOTICE OF PROTEST.
When notice has thus been given to said bank in the town of C., the duty devolves upon it to give notice of such protest to the prior indorsers, if he wishes to hold them as such.

3. NEGOTIABLE NOTE—NOTICE OF PROTEST.
Although one of said indorsers resides in the city of H., where said note was payable, said bank in the town of C. may send notice of such protest through the mail; and, if sent in due time, said indorser will be held, although he never receives the notice so sent.

4. NEGOTIABLE NOTE—NOTICE OF PROTEST.
Under the circumstances of this case, the indorser residing in the city of H., where said note was payable, is not entitled to personal service of the notice of such protest, although he resides in the city where said note was made payable.

SIMMS & ENSLOW for plaintiff in error, cited 3 Randolph Com. Paper 268, § 1240; 5 Mason (U. S. Cir. Ct. Rpt.) 366; 17 Wis. 157; 48 Mo. 66; 3 Dana (Ky.) 126; 3 Mackey 351; 3 Humph. (Tenn.) 670; 34 N. Y. 128; 1 Parsons on Notes & Bills 514, 578; 28 Ver. 316; 6 Mass. 316; 7 East 385; 7 Pa. St. 178.

CAMPBELL & HOLT for defendants in error:
*Notice of protest must be personal, and not by mail, unless proven to have been received in due time, when the indorser lives in the same city or town where the note is payable.*—2 Daniel on Nego., Ins., 1005, 1038, 1039; 6 How. 248; 2 Peters 96; Story on Bills, § 312; 15 Gratt. 501; 29 W. Va. 528; Parsons on Notes and Bills 511; 1 Am. L. Cases 390; 1 Ohio St. 266; 2 Rob. Pr. 190, 191, 197; 7 Bush (Ky.) 93.
*Who are regarded as of the same place.*—102 Mass. 177; 4 Humph. 86; 5 Metc. 212; 2 Hill 587; 10 Johns. 490; 11 Johns. 231; 6 Mart. 506; 6 How (Miss.) 609; 10 Neb. 338; Mart. and Yerg. 183; Edwards on Bills 602; 8 W. & S. p. 138; 4 Wash. C. C. Rep. 470.

ENGLISH, JUDGE:

On the 29th day of July, 1892, the Big Sandy National Bank brought an action of *assumpsit* in the Circuit Court of Cabell county against W. E. Chilton, M. B. Mullins, Thomas H. Harvey, Z. T. Vinson, J. C. Williamson, and W. H. Crum, on a certain negotiable note made by W. E. Chilton, dated January 13, 1891, whereby, three months after date, without grace, he promised to pay to order of M. B. Mullins, two thousand dollars, payable at the First National Bank of Huntington, value received, with interest from date, which note was indorsed by M. B. Mullins, Thomas H. Harvey, Z. T. Vinson, J. C. Williamson and W. H. Crum to the said Big Sandy National Bank.

The defendants Z. T. Vinson and T. H. Harvey plead *non-assumpsit*, and issue was joined thereon. The case was submitted to a jury, and resulted in a verdict for the defendants Z. T. Vinson and T. H. Harvey, and against the defendants M. B. Mullins and W. E. Chilton, for the sum of two thousand one hundred and sixty dollars and ninety four cents; and thereupon the plaintiff moved the court to set aside said verdict so far as it found for the defendants T. H. Harvey and Z. T. Vinson, and award it a new trial on the ground that so much of said verdict was contrary to the law and the evidence, and because the court misdirected the jury, which motion was overruled by the court and judgment was rendered in accordance with said verdict; and thereupon the plaintiff excepted to the rulings of the court, and tendered its bill of exceptions, which was signed, sealed and made a part of the record in the cause.

After the testimony in the case was concluded, the plaintiff asked the court to give the jury the following instruction: "The court instructs the jury that if they find from the evidence that the note sued on was duly presented at the counter of the bank at which it was payable on the day it was due, and payment demanded, at the close of banking hours, and payment was refused, and it was on the same day duly protested by the notary who presented it, and the

notices of protest were duly sent by the United States mail that day to the Big Sandy National Bank or M. H. Houston, the cashier thereof, and the cashier, Houston, on the same day he received the said notices, duly mailed them to T. H. Harvey and Z. T. Vinson, Huntington, W. Va. (their place of residence) and placed them so addressed in post-paid envelopes in the post office at Catlettsburg, Ky., then you should find for the plaintiff against the said T. H. Harvey and Z. T. Vinson." The defendants T. H. Harvey and Z. T. Vinson objected to said instruction, and the court sustained said objection, and refused to give said instruction, to which ruling the plaintiff excepted. The said defendants Harvey and Vinson asked the court to give the following instruction to the jury: "The court instructs the jury that if they find from the evidence in this case that the defendants T. H. Harvey and Z. T. Vinson were indorsers of the note in suit, and were resident in the same city or town where demand for the payment of said note was made, and if they further find from the evidence that no notice of protest was personally given to or left at the dwelling house or place of business of said indorsers, then said indorsers, Harvey and Vinson, are not liable, and the verdict of the jury must be for them." The plaintiff objected to the giving of said instruction to the jury. The court overruled said objection and gave said instruction, to which ruling the plaintiff again excepted; and thereupon the plaintiff applied for and obtained this writ of error.

The sole question presented for our consideration is whether the defendants T. H. Harvey and Z. T. Vinson were legally and properly served with notice of the protest of the note sued upon, so as to bind them as endorsers of the same.

The facts in regard to the protest and notice are as follows: On the day said note matured, it was presented at the counter of the First National Bank of Huntington, and payment thereof was demanded, and, being refused, it was protested by E. B. Enslow, a notary public, who prepared notices of the protest, inclosed them all in one envelope, and mailed them to the cashier of the Big Sandy National Bank

at Catlettsburg, Ky., which bank was the owner and holder of said note, on the 13th of April, 1891, at 6 o'clock p. m., which notices were received by said cashier the next morning after the protest, and were mailed by him on the same day to Thomas H. Harvey and Z. T. Vinson, directed to Huntington, W. Va., but were never received by them.

In considering the questions presented in this record, I shall first inquire what are the duties of a bank to which a negotiable note is endorsed by the holder for collection with reference to said note when the same matures. Daniel on Negotiable Instruments (volume 1, § 331) says: "Sometimes a bank holding endorsed paper for collection sends notice in the event of its dishonor to the endorser from whom it was received. Sometimes it sends notices, not only to him, but also to the drawer and to all the indorsers, addressed to their post offices, or delivered at their places of business, respectively. Sometimes it incloses notices for all the parties entitled thereto under one envelope, in company with notice to the last endorser, that he may thus be conveniently supplied with the means of transmitting notice to the successive indorsers, and to the drawer antecedent to him, if such there be. But how far the duty of the bank extends in this regard, and what it must do to discharge itself of liability, is a question upon which opinion has divided. The weight of authority, however, is strongly to the effect, and the law may be assumed to be, that it is only necessary for the bank to notify its immediate predecessor—that is, the party from whom it received the paper—no matter what may be the nature of the title or interest of that party to or in it." So it was held in the case of *Phipps* v. *Bank* 8 Metc. (Mass.) 79, that "a bank that receives from another bank for collection a note indorsed by the cashier of that bank is bound to present it to the maker for payment at maturity, and, if it is not paid to give notice of non-payment to the bank from which the note was received; but it is not bound, unless by special agreement, to give such notice to the other parties to the note." Edwards on Bills and Notes (volume 2, § 834) says: "The holder should give notice of dishonor to all the parties to whom he intends to look for

payment, but it is enough for him to send or give due notice to his indorsers for the purpose of charging the party indorsing the bill over to him, and it is the business of each indorser to take care that the party responsible to him is duly notified." Again, in the case of *Bank* v. *Goddard,* 5 Mason 366, Fed. Cas. No. 917, it was held that "where a note is made payable at a particular place, and the indorser resides there, if the holder remits it to his agent at such place for payment, and it is dishonored, the agent is not bound to give notice of the dishonor to the indorser, but his duty is to give notice to his principal, who may then give notice to the endorser, and, if given in due time after the principal has received notice, the indorser is bound." In the case of *Phipps* v. *Bank, supra,* the court in speaking of the case of *Bank* v. *Goddard,* says: "The case was thoroughly argued, and an elaborate opinion given by the learned judge of the Circuit Court of the United States, in favor of the plaintiffs, that the agent was not bound to give notice of dishonor to the indorser, even though living in the same place, but only to his principal." In the case of *Howard* v. *Ives,* 1 Hill 203, "where H., an indorsee of a bill of exchange, indorsed it to a bank for the mere purpose of collection, and the notary employed by the bank transmitted notice of protest by mail to H. on the next business day after presentment, *etc.,* who on the next day after receiving it mailed notice to his indorser, held sufficient to fix the liability of the latter, though, had the notice been sent directly to him, he would have received it sooner; and this *semble* whether the notary be regarded as H.'s agent or that of the bank." We also find it held in the case of *Mead* v. *Engs,* 5 Cow. 303, that "one to whom a bill or note is endorsed merely as agent to collect (e. g. a bank) is a holder for the purpose of giving and receiving notice of non-payment; and he is not bound to give notice of non-payment directly to all prior parties, but may notice his next immediate indorser, who is bound to notice his indorser, *etc.,* in the same manner as if the bill or note had been negotiated for a valuable consideration." And in this connection attention may be called to the fact that the Bank of Huntington is not a party defendant to this suit,

and no effort is made in the case to fix responsibility upon it or to obtain judgment against it. And, again in the case of *Philipe* v. *Harberlee*, 45 Ala. 597, it was held that "notice of the protest of a note or bill of exchange may be given to an indorser through the post office, notwithstanding the place where payment was to be made, and where the demand and protest were made, was that of his residence, when the holder, who is the owner, lives elsewhere." And upon this question, in New York, in the case of *State Bank* of *Troy* v. *Bank of the Capitol*, 41 Barb. 343, it was held that "in the case of a bill or note sent to a bank as agent for collection merely, in the absence of an express contract or of commercial usage, it is not obligatory on the collecting bank to notify and duly charge all the prior parties to the paper, but only its own principal or immediate indorser." And, upon this question, see *Bank* v. *Smith*, 132 Mass. 227 and *Spencer* v. *Ballou*, 18 N. Y. 327; 3 Rand. Com. Paper, §§ 1240, 1241. In section 1240 it is said: "Notice may be transmitted from one indorser to another, and so back to the drawer of the bill, however circuitous the manner of giving notice may be. And such a notice is sufficient, although the holder and the remote party may live in the same town." And in section 1241 the law is stated to be that "an agent for collection is only required to give notice of dishonor to his principal." And in 2 How. 66, it is held, in *Burke* v. *McKay*: "Neither is it a necessary part of the official duty of a notary to give notice to the indorser of the dishonor of a promissory note."

Now, the evidence in the case under consideration shows that the note in controversy was discounted by the Big Sandy National Bank of Catlettsburg, Ky.; that it was presented there by W. H. Crum, who got the money on it; that said bank sent said note to the bank of Huntington for presentment; that the defendant Z. T. Vinson was a resident of the city of Huntington; and that T. H. Harvey resided near the city of Huntington, W. Va., and received his mail at that place. When said note had been presented, on the day of its maturity, at the first National Bank of Huntington, and payment had been refused, said note was duly protested, as above stated, and notices sent to the Big Sandy

National Bank; and, the same day said notices were received, they were placed in separate envelopes, properly stamped, and directed, one to Z. T. Vinson, and another to T. H. Harvey, at Huntington, W. Va.; and they state in their testimony that they never received either of said notices. It is true that the cashier of the Big Sandy National Bank is uncertain as to the date when he received said notices, and says that it may have been the 17th or 18th of April. The protest was on the 13th of April, 1891, but he states on cross-examination that he received them the next morning after the note was protested, and that he mailed the notices of protest to said Harvey and Vinson on the same morning.

Under this state of facts, did the Circuit Court err in refusing to give the instruction asked for by the plaintiff, and in giving the instruction asked for by the defendants, both of which are set forth above, and present in a few words the true controversy in the case? The defendants Harvey and Vinson contend that under the circumstances, unless notice of protest was personally given to them, or left at their dwelling house or place of business, they were released from their liability as indorsers of said note; while the plaintiff, on the other hand, contends that it had a right to send the notice of protest as it did through the mail, and thereby hold them as indorsers, whether they received them or not.

Parsons, in his work on Mercantile Law, at page 115, says: "Each party receiving notice has a day or until the next post after the day in which he receives it before he is obliged to send the notice forward. Thus, a banker with whom the paper is deposited for collection is considered a holder, and entitled to a day to give notice to the depositor, who then has a day for his notice to antecedent parties." Now, while it is true that a bank to which a note is indorsed for collection is such a holder that it may give notice to all prior indorsers upon the note, yet, as we have seen, it is not bound so to do. All that is required of such bank is to give notice to its immediate indorser; and in this instance the indorser to whom the Bank of Huntington was bound to give notice did not reside at Huntington, but at Catlettsburg, Ky.

Therefore the notice could be given through the mail. When the bank at Catlettsburg received such notice, then the duty devolved upon it to notice the prior in-dorsers if it wished to hold them, which it did by placing notices in the mail the same day on which it received notice, to wit, the next day after the pro-test; and, if said bank had the right to do this, it bound said Vinson and Harvey, whether they received the notices or not. In 2 Rob. Prac. (New) at page 192, we find it stated that "it has been held by the Supreme Court of Pennsylvania and by the Supreme Court of the United States that notice to a party put into the post office of the town wherein the presentment and demand are made will be sufficient when he lives beyond the limits of the town, and it may be directed to him at that town if its post office be the nearest to his residence, and that at which his letters are received;" citing *Bank* v. *Lawrence*, 1 Pet. 580; *Jones* v. *Lewis*, 8 Watts & S. 14.

In the case we are considering, the indorser Harvey did not reside in the city of Huntington, but received his mail at Huntington. The indorser Vinson, however, did reside in the city of Huntington, and the question is whether, so residing, he was entitled to personal service of notice; and, if there was any party in the city of Huntington who was bound to give him notice of the dishonor of said note, he, perhaps, would be entitled to personal service, either at his residence or place of business, although in the case of *Boyd's Adm'r* v. *City Sav. Bank*, 15 Gratt. 501, it was held that where "an indorser of a negotiable note dies intestate before it falls due, and, when it falls due, it is regularly protested for non-payment, and, no person having then qualified as administrator on the estate of the indorser, the notary on the same day deposits in the post office at Lynchburg, where the note had been made payable and discounted, the notice of protest, directed to the 'legal representative' of the in-dorser, Lynchburg, the indorser having lived in that place, and his family still living in the same house, the notice is sufficient." Moncure, Judge, in delivering the opinion of the court in that case said: "While it has been long and

well settled that, if the parties to give and receive notice reside in different places, the notice may be sent by mail, so in the other it seems to be well settled, at least as a general rule, that, if they reside in the same place, the notice must be personal; that is, must be given to the individual, or left at his domicile or place of business"—citing 1 Am. Lead. Cas. (4th Ed.) 396 and notes, and 2 Rob. Prac. (New) 191. But of late the courts have strongly inclined to restrict the general rule referred to, and have established many exceptions to it, as may be seen by referring to the case of *Bank* v. *Lawrence*, 1 Pet. 578, cited in 1 Am. Lead. Cas. 402, 403, and the notes. The law is stated thus in the case of *Linn* v. *Horton*, 17 Wis. 157: "The holder of a bill or note may rely, if he chooses, on the responsibility of his immediate indorser, and need not give notice of protest for non-acceptance or non-payment to any previous party." And in the case of *Griffith* v. *Assman*, 48 Mo. 66, that court held that, "when the notary making a protest knows the residence of all the indorsers, he may at once send the notice of protest to each one individually, when they will be holden in the order of their indorsements. But the holder is not supposed to know any of the parties except the one who has endorsed the paper to him, and each one is supposed to know the one from whom he has received it. The contract is direct, and the relation is immediate between each indorser and his immediate indorsee, and the notice is sufficient if it comes to each indorser from such indorsee as soon as he is advised of the protest. Nor does the rule vary although the parties live in different cities. The holder is only required to notify the one who indorsed to him, unless he desires to hold other parties who might escape responsibility if not notified in their town. Nor is there any difference if the last indorsement is for collection only."

In the case we are considering, the last indorsement was for collection only, and notice was given to the Big Sandy National Bank, that indorsed said note for collection, on the same day the note was protested. Story on Bills of Exchange (section 294) says: "Where there are numerous parties in succession on the bill as drawers or indorsers, who

·are entitled· to notice, and may, as drawers or indorsers, be liable on the dishonor of the bill, not only to the holder, but to any intermediate indorser standing between him and themselves, it is apparent that, as each of such successive parties is entitled to a full day to give notice to any antecedent party in the bill, several days may elapse without any *laches* in any party, between the time of the dishonor and the time of notice thereof to the drawer or the other early indorsers. Nay, this may occur in respect to parties all of whom reside in the same town; and yet if the notice is communicated to them in regular succession, making an allowance of one day for each party who receives notice to give notice to the antecedent parties, they will all be held liable, and the notice be deemed sufficient to bind them." In this connection I refer also the case of *Bank* v. *Taylor*, 34 N. Y. 128, where it is held that, "the whole duty of a holder of a protested bill is discharged by notice to his immediate indorser, and all parties to the bill or note will be charged if they receive notice in due course from their immediate subsequent indorsers. When the collecting agent of the holder resides in the same city with one of the indorsers, it does not modify the rule as above stated." The opinion of the court in this case was well considered, and, in concluding, the following language is used: "The text writers and all the authorities I have examined concur in the doctrine that the whole duty of the holder is discharged by notice to his immediate preceding indorser, and that all prior indorsers are fixed if they receive reasonable notice of the dishonor of the bill or note from their immediate prior indorser. These rules have long been settled and familiar to those dealing in notes and bills of exchange. It is of the utmost importance that rules of this character when once promulgated should be adhered to, and we are not at liberty to part from them if we would. I find no case where an exception has been made by reason of the circumstance that an intermediate indorser is a resident of the same town, city or village with the holder. If he is not the immediate prior indorser of the holder at the time of protest, the whole duty of the holder is discharged by the notice to his immediate indorser,

and all parties to the bill or note will be charged if they receive notices in due course from their immediate subsequent indorsers." See *Bank* v. *Taylor*, 7 Bosw. 466, where this question is carefully considered and numerous authorities cited; also, 34 N. Y. 128, where the last named case was affirmed on appeal. See, also, the case of *Hill* v. *Bank*, 3 Humph. 670, in which it appears that "an agent resident in New Orleans, to whom a bill was indorsed for collection, and which was protested for non-acceptance, gave notice to the principal, resident at Nashville, and the principal thereupon gave notice to the indorser, resident at New Orleans; held, that this notice was good."

In the case at bar the evidence shows that the notices to Harvey and Vinson were in due time placed in prepaid envelopes and delivered in the post office at Catlettsburg, a town about twelve miles from Huntington, between which towns the mail is carried twice a day. On this point, Parsons on Bills and Notes (page 478) says: "In other words, the sender is bound to use due diligence; and on this point it is sufficient diligence if the letter be put into the regular post office, for it can not be asked of any sender that he should have any oversight of or interference with the public service of the post office; and therefore he is held to no liability for accident there, however it may happen"—citing numerous cases in note. Now, it is true that in the case of *Insurance Co.* v. *Wilson*, 29 W. Va. 528 (2 S. E. Rep. 888) Woods, Judge, in delivering the opinion of the Court, on page 546, 29 W. Va. and page 888, 2 S. E. Rep., says: "When a negotiable note is dishonored, it is the duty of the holder to give immediate notice of such dishonor to the indorser;" and that, "when the indorser resided in the same town where the demand is made, the notice must be personal, or left at his dwelling house, or place of business." And the same is held, in substance in the case of *Bowling* v. *Harrison*, 6 How. 248. It is there held that, "where the holder of a protested note and the party entitled to notice reside in the same city or town, notice should be given to the party entitled to it, either verbally or in writing, or a written notice must be left at his dwelling house or place of business." A party,

however, to be entitled to such notice, must be one to whom the holder residing in such city or town was bound to give notice; and in the case of *Insurance Co.* v. *Wilson, supra,* speaking of the mode of service upon an indorser, what indorser is intended and referred to? Surely, it was and is intended that the indorser to be so personally served with notice is the one that the holder was bound to serve notice upon; but, as we have seen, the Bank of Huntington, which was the holder·in the city of Huntington, which held the note by indorsement from the Big Sandy National Bank for the purpose of collection, was not bound to serve notice upon either Harvey or Vinson, but was only bound to give notice to its immediate indorser, the Big Sandy National Bank; and, when that was done, its whole duty with reference to said note was performed, and the duty then devolved upon the Big Sandy National Bank to give notice to the prior indorsers in due time, if it wished to hold them. This last named bank was the holder for value, the real owner of the note, having discounted it; and when it undertook to give notice to the prior indorsers, and among them Harvey and Vinson, residing in a different town from the location of said bank, all that was required of it was to properly mail such notice in due time, directed to said Harvey and Vinson, respectively, addressed to each of them at Huntington, where they receive their mail; and, having done this, said indorsers would not be released as such, although the notice was never received.

In the case of *Bowling* v. *Harrison, supra,* it is also held that the term "holder" includes the bank at which the note is payable and the notary who may hold the note as the agent of the owner for the purpose of making demand and protest. In this case the note was sent, as is the almost uniform custom, to the bank at which it was payable for collection; and, as we have seen, the bank to which a note is thus sent is a holder to such an extent that it may give notice to the indorsers; and, if it undertake to do so, an indorser residing in the same city or town is entitled to personal service, but it is not bound to give such notice, and, as I think the weight of authority shows, it is only bound

to give notice to its immediate indorser, and, if such indorser wishes to give notice to prior indorsers, he may do so through the mail if such indorser resides at a different place, even though such indorser may reside in the same town in which the bank is located to which it was sent for collection; and, as to the duty of the notary, in the case of *Burke* v. *McKay*, 2 How. 66, it is held that "it is not a necessary part of the official duty of a notary to give notice to the indorser of the dishonor of a promissory note."

I therefore think that the Circuit Court erred in rejecting the instruction asked for by the plaintiff, and in giving the instruction asked for by the defendants, and in rendering the judgment complained of, releasing and exonerating said Harvey and Vinson as indorsers upon said note. The judgment complained of is therefore reversed as far as it exonerates said Harvey and Vinson from liability as indorsers upon said note, and the verdict of the jury is set aside so far as it finds for the defendants T. H. Harvey and Z. T. Vinson. A new trial is awarded as to them, and the case is remanded to the Circuit Court of Cabell county, for further proceedings to be had therein, with costs to the plaintiff in error.

## On Rehearing.

This cause was submitted at the January term, 1894, and the foregoing opinion was handed down at the spring special term, 1894, and a rehearing was then awarded, since which time no additional brief or argument has been submitted by the defendants in error. A brief, however, has been filed by the plaintiff in error; and although I have carefully gone over the case and the authorities cited, and to which I have had access, I see no cause to alter my opinion. The true rule as it appears to me is stated in *Bank* v. *Taylor*, 7 Bosw. 466, where it is held that "there is no rule requiring that the indorser residing in the same town as the acceptor shall be notified the next day after the presentment, where the banker at whose instance the bill is protested, and to whom notices of protest are sent, does not reside in said town. It is enough to charge him that the true owner mails

notice to him by the first mail of the day next after that on which he in due course receives notice of dishonor, such owner and indorser residing in different towns." That case was taken to the Court of Appeals of New York, and the report of the result is found in 34 N. Y. 128, where it is held: "The whole duty of the holder of a protested bill is discharged by notice to his immediate indorser, and all parties to the bill or note will be charged if they receive notice in due course from their immediate subsequent indorsers. When the collecting agent of the holder resides in the same city with one of the indorsers of the bill, it does not modify the rule as above stated." In the case of *Bowling* v. *Harrison,* 6 How. 248, if the Planters' Bank of Vicksburg had sent notice of protest to Bowling, who resided in Maryland, which it had a perfect right to do, it would then have done all that was required of it to hold Bowling and relieve itself from responsibility, and then Bowling would have had a perfect right to send notice through the mail to Harrison at Vicksburg; but the bank having elected to serve the notice directly upon Harrison, the indorser, who resided in the same city, service had to be made personally. My conclusion is that the judgment of the Circuit Court must be reversed so far as it exonerates said Harvey and Vinson from liability as indorsers upon said note; the verdict of the jury must be set aside so far as it finds for the defendants T. H. Harvey and Z. T. Vinson. A new trial is awarded as to them, and the cause is remanded to the Circuit Court of Cabell county, for further proceedings to be had therein, with costs to the plaintiff in error.

---

BRANNON, JUDGE:

On first impression I was of opinion last term that the judgment discharging Harvey and Vinson was right, but further reflection and examination have brought me to the same conclusion announced by Judge English.

Point 13 of the Syllabus in *Insurance Co.* v. *Wilson,* 29 W. Va. 528 (2 S. E. Rep. 888), correctly states the rule

as it was before section 8, chapter 99, Code, was amended by chapter 4, Acts 1891, so as to read as found in the edition of 1891 of our Code. Said point says: "Where the indorser resides in the same city or town where the demand of payment is made, the notice to the indorser must be personal, or left at his dwelling house or place of business." But which indorser is here meant? Does it mean that if any one of several indorsers, immediate or remote, lives in the town where the demand of payment is made, he must be given personal notice? Or does it only mean that, if the immediate indorser live there, he must have personal notice? That depends on whether the collecting bank must notify all or only its immediate indorser. Some banks notify all; some, only the party sending the note. 1 Daniel, Neg. Inst. § 331. Some authorities hold that the collecting bank must notify all indorsers, so as to hold all bound; some other authorities hold that notice given by the collecting bank to its principal in time to enable him to give reasonable notice to those to whom he intends to look is sufficient, the bank being regarded as the real holder so far as giving and receiving notice is concerned. Id.; note in Allen v. Bank, 34 Am. Dec. 311. I think that the bank, to discharge itself from liability, need only give timely notice to its indorser, and that if that indorser give, within the time allowed by law, notice to the prior indorser, he is bound. Judge Moncure properly says: "While, on the one hand, it has been long and well settled that, if the parties to give and receive notice reside in different places, the notice may be sent by mail. So, on the other, it seems to be well settled, at least as a general rule, that, if they reside in the same place, the notice must be personal." Boyd's Adm'r v. City Sav. Bank, 15 Gratt. 505. Who are the parties to give and receive notice? is the question. I have with some hesitation concluded that, to start out, the collecting bank is a holder for this purpose. It gives notice to him who indorsed the note to it. If that indorser live in the same town with the bank, the notice must be personal; if he does not live there, notice may be sent by mail; and, though a remote indorser may live in the place

where the bank is, that does not require the bank to give him notice, personal or otherwise. *Bank* v. *Taylor,* 34 N. Y. 128. If it does give notice to him it ought to be personal. *Ramson* v. *Mack,* 38 Am. Dec. 610. This is because the law only required the bank to give notice to its indorser. When the bank gives its immediate indorser notice, he has a certain time to give notice to the party who indorsed the note to him, by personal service, if living in the same town, or, if not, he may use the mail. So on through the line of indorsement. Thus, the place of common residence shifts with each indorsement. One who is an indorser to another is the person to receive notice, and the other is the one to give notice; and in the next step he who received this notice becomes the one who is to give notice to some one who indorsed it to him.

In this case the Bank of Huntington was holder, and gave notice to the Catlettsburg bank by mail, as it resided in another town. And the Catlettsburg bank must give notice to Crum by personal service, if living in Catlettsburg, otherwise by mail; and so on through the line of indorsements. Any one in the line has right, being a holder entitled to look to all precedent indorsers, to give notice to all of them, giving personal notice or by mail, according as they live in the same town or not. Whether personal notice or by mail shall be given is according to whether the particular party required to give notice lives in the same town with the one to whom the notice is to be given. If he undertakes to notify all, he must conform to this. The law says that he who is to give notice must give personal notice to a person residing in the same town with him. That does not mean some one living in the same town who is an indorser, but not indorser to the person giving notice. If that indorser is not notified according to law, he is released, and therefore any holder ought to have a right to notify all prior indorsers, by notice proper, according as it is between him and them; but if he notifies only his indorser, trusting that his indorser will notify his own indorser so as to hold him, he need not give personal service to any one but his own indorser living in his own town; and having done this, if his

indorser gives notice, proper as between himself and his immediate indorser, the latter is bound to any holder subsequent. It is only a question of notice of a fact—that is, non-payment; and, come from whom it may, unless a stranger, it is enough. See *Bank* v. *Taylor*, 34 N. Y. 128.

If the above be true, if A. make a note to B., resident at Charleston, payable at a Charleston bank, and B. indorse to C., of New York, and C. indorse it to D., of Melbourne, and D. sent it to the Charleston bank for collection, notice of dishonor need not be given to B., though living at Charleston, but to D., of Melbourne; and if he, in due time after receiving notice, send notice by mail to C. at New York, and then C., in due time send notice to B., at Charleston, by mail, B. will be bound, though he get notice months after non-payment. This consideration largely induced me to the first opinion entertained—that personal notice from the bank, or its agent, the notary, must be given at once to B., because living at Charleston; but it seems that, while it may be so, it need not. The many cases relating to this subject are calculated to confuse and mislead, especially the generality of the language that, when the indorser lives in the same town, he must have personal notice. The change by the act of 1891, dispensing with the necessity of personal notice of non-payment, renders the matter of little importance, save as to cases before its passage.